JEAN v. HOPE FERTILIZER COMPANY.

Opinion delivered January 14, 1918.

FRAUDULENT CONVEYANCES—HUSBAND TO WIFE.—Conveyances from a husband to his wife are presumed to be voluntary, and as against his creditors, the burden is on the wife to show the transaction was not voluntary.

Appeal from Union Chancery Court; *James M. Barker,* Chancellor; affirmed.

*Neill C. Marsh,* for appellants.

Whether the deed was voluntary and fraudulent is a question of fact. The law is that such deeds are voluntary, and places the burden on the wife to show a valid consideration free from fraud. There is no conflict in the evidence. The wife was able to buy, and the testimony shows she paid in all over $2,000 for the land. No intent to defraud creditors is shown. The decree of the chancellor is contrary to the preponderance of the evidence.

*Lemley & Lemley* and *J. D. Trimble,* for appellee.

The conveyance is presumed to be voluntary, and the burden was on appellees to show it was not voluntary but was for a fair and valuable consideration.

No money was paid at the time and no notes were given for the purchase money. The deed recited a cash consideration and contained all of Jean's property. His wife knew of his debts and the hazards of a fertilizer business. There is no satisfactory evidence of the payment of the $2,000. All these circumstances are badges of fraud. 113 Ark. 100; 50 *Id.* 314; 85 *Id.* 225.

The chancellor's finding is supported by the evidence.

HUMPHREYS, J. Appellee instituted suit against appellants in the Union Chancery Court to cancel as vol-

untary and fraudulent a deed to 250.70 acres of land in Union County, Arkansas, executed on the 27th day of July, 1914, by J. D. Jean to Gertrude Jean, his wife; and to subject said real estate to the payment of a judgment which it obtained in a magistrate's court against J. D. Jean, H. H. Bishop, M. J. Bishop, A. Brown and W. E. Brown, for $204.93, on the 20th day of May, 1916. Appellants filed separate responses, denying that the conveyance was voluntary or made to defraud appellee or hinder or delay it in the collection of its debt.

The cause was submitted upon the pleadings, oral and record evidence, from which the chancellor found that the conveyance, though executed for a pretended consideration of $2,000, was voluntary and made for the purpose of hindering, delaying and defrauding creditors, and decreed a cancellation of the conveyance and ordered a sale of the real estate to pay said indebtedness.

The correctness of the chancellor's finding and decree is challenged by appeal to this court.

In the spring of 1914, J. D. Jean incurred an indebtedness of $830.37 for fertilizer to the Hope Fertilizer Company. The contract under which he ordered the fertilizer provided that he should turn over to the company the cash sales prior to May 1, 1914, and to endorse the notes representing the credit sales he made to various parties.

He was at the time engaged in operating a farm of 250.70 acres owned by him near Three Creeks, and on busy days assisting his wife in running her store. She had accumulated quite a little sum from a dairy business and with the savings entered into the mercantile business at Three Creeks.

On the 27th day of July, 1914, while J. D. Jean was indebted to the Hope Fertilizer Company and others, he conveyed his farm of 250.70 acres near Three Creeks to Gertrude Jean, his wife, for a purported consideration of $2,000. No money was paid at the time. No notes were executed for the purchase money. Mrs. Jean testified that she paid for the land in the following manner:

That in the year 1914 she paid about $550 on her husband's fertilizer accounts, mostly to other companies, and $440 to two of her husband's farm hands, and furnished one of her husband's tenants an indefinite amount; and in 1915, paid two notes, one for $120 and another for $240. The following question was propounded to her and the following answer given with reference to the two notes:

Q. In 1915 did you make another payment?

A. Yes. Two notes, one for $120 and another for $240; that is, I boarded him and his wages was $240.

She made the general statement that the amounts paid on the notes and for fertilizer and goods furnished totaled $1,909.15 and that she paid the balance in money.

J. D. Jean testified that the land was conveyed to his wife for a consideration of $2,000; that his wife paid $550 on his fertilizer accounts, including three small notes representing a portion of the fertilizer indebtedness due appellee, and that the balance was paid in supplies and money advanced to hands and tenants out of the store of his wife.

The judgment for $204.93, constituting the basis of this action, was procured on the 20th day of May, 1916, before W. E. Mason, a justice of the peace, on a renewal note executed on November 1, 1915, for $217.50 by J. D. Jean, H. H. Bishop, M. J. Bishop, A. Brown and W. E. Brown, for a balance due appellee for fertilizer sold by J. D. Jean to W. E. Brown out of the shipment ordered by him in the spring of 1914. The note bore 8 per cent. per annum and $30 was paid on it before the institution of the suit. Execution was raised and returned *nulla bona*. A transcript of the judgment was filed in the office of the circuit clerk in said county, and judgment was entered as provided by statute. An execution was issued thereon and no property could be found belonging to J. D. Jean or his co-obligors out of which the judgment could be satisfied.

Both J. D. Jean and Gertrude Jean were of opinion that J. D. Jean should not pay the debt for the reason that another party used the fertilizer. Mrs. Gertrude Jean

knew that her husband owed appellee a large amount for fertilizer at the time she accepted the deed. They justified the conveyance on the ground that it was necessary for him to sell the farm to pay his debts. The fair market value of the farm was $2,000. After the conveyance was made, J. D. Jean remained in possession and control of the farm and it was assessed in his name in 1915. He also conveyed a right-of-way across the land to a lumber company after he made the conveyance to his wife but says he did it under her direction. Mrs. Gertrude Jean started her business career on one cow and a calf, a marriage gift, and inherited two or three more from her father's estate. She accumulated a herd of fifty head of cattle aside from those killed and sold; and, in addition, acquired a wagon and team, a stock of merchandise valued at about $2,500, and all her husband's farm lands. As far as the record shows, J. D. Jean started with a farm, and during the same period of his wife's prosperity, without suffering any material losses or meeting any adverse conditions except the war conditions that caused cotton to fall in price in 1914, acquired nothing by his years of labor, but lost a valuable farm. Mrs. J. D. Jean had ample means to buy the farm at the time she acquired it. This constitutes the substance of the record as we read it.

Conveyances made by the husband to the wife are presumed to be voluntary. As against the claims of existing creditors, the law places the burden upon the wife to show that the conveyances were for fair and valuable considerations and not voluntary. Under this rule of law, the only question for determination is whether the finding of the chancellor is contrary to a clear preponderance of the evidence.

It is contended by appellant that the record, without conflict, reflects that Mrs. Gertrude Jean had the means to purchase the farm, and that she paid indebtedness of her husband in the sum of about $2,000 as consideration for it, which was its fair market value. So far as showing her ability to buy the farm, Mrs. Jean has met the

burden placed upon her by the law, but she failed to meet the burden with reference to showing that she paid for it. According to her evidence, she paid $550 on fertilizer debts, $450 to hands and some advances to a tenant in the year 1914. Her statement as to what she paid in 1915 is not understandable. If she meant that her husband's wages amounted to $240, then a payment by her must be regarded as a payment by her on his wages and not a payment on the land. If it was a payment to the hands, she failed to say so in her testimony. If the $120 note covered board for her husband, the charge was a new departure in their manner of living. Her testimony is not sufficiently clear to say that the $120 note covered board for a hand. No explanation was made as to why the items of board and wages were covered by notes. At another place in her testimony, she testified that her husband made his way. However, these two items, when added to those paid in 1914, total only $1,360, instead of $1,909.15. These seem to constitute the only items to which she has definitely testified and fall far short of showing that she paid the consideration for the farm. Mrs. Jean's evidence is not at all satisfactory as to the amounts and manner of payment. Nothing seems to have been paid at the time of the execution and delivery of the deed. The consideration recited was $2,000 cash in hand paid. No debts were assumed in the face of the deed. No note was given for the purchase money. The deed seems to have been made without consideration. Later in the year 1914 Mrs. Jean paid $1,000 on her husband's debts and by agreement between them, presumably at the time of payment, it was treated as a payment on the land. The payment of the two notes in 1915, one for $120 and the other for $240, was treated in the same manner between the parties. Mrs. Jean's evidence concerning the payment of those two notes is so hazy that the court can not even regard the explanation as sufficiently clear upon which to make a definite finding. We do not regard the reasons assigned for making the sale as sound and plausible. It is said by both parties that the sale was made for

the purpose of enabling J. D. Jean to pay his pressing debts. The only debts he owed were nondue debts to the appellee for fertilizer, and debts to several other fertilizer companies for about $500 and some amounts to his wife for advances made to his hands and tenants. He was not being pressed, and it was wholly unnecessary for him to make the sale. At the time he made the deed he had outstanding obligations that might, or might not, become pressing at a later period. The purpose of the deed may have been to prepare for such a contingency.

We do not think the appellant in this case has met the burden placed upon her by the law; at least, we can not say that the finding of the chancellor is contrary to a clear preponderance of the evidence.

The decree is affirmed.